**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NATHANIEL E. BOSTIC**,

                    **Plaintiff,**       **Civil Action No.: 3:06-CV-540**
     **v.**                          **TJM/DEP**

**CITY OF BINGHAMTON; CARL SMITH;**
**J. FIAN; CITY OF BINGHAMTON POLICE**
**DEPARTMENT,** *et al.*

                   **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

## I.  INTRODUCTION

On May 3, 2006, Plaintiff commenced the instant action *pro se* asserting claims

sounding in "malicious prosecution, false imprisonment, false arrest, intentional infliction of

emotional distress and libel and slander."  Compl. ¶ 7 [dkt. # 1].  Defendants moved to

dismiss the action pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).  On

October 10, 2006, the Court issued a Decision and Order granting the motion in part and

denying it in part. See 10/10/06 Decision & Ord. [dkt. # 14].  Plaintiff was granted leave to

replead certain claims. Id.

Thereafter, Plaintiff retained counsel, see dkt. # 29, and, on October 4, 2007, filed

an Amended Complaint. See Am. Compl. [dkt. #39].  In the Amended Complaint, Plaintiff

asserts federal claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and state

law claims pursuant to New York State law.  The claims, which arise from Plaintiff's

November 11, 2003 arrest and subsequent prosecutions for criminal acts and a parole

violation, are brought against various City of Binghamton and New York State defendants.

The City of Binghamton, the City of Binghamton Police Department, City of Binghamton

Police Officer Carl Smith, and City of Binghamton Police Officer J. Fian (collectively

referred to as "Defendants" on this motion) move to dismiss the claims against them

pursuant to FED. R. CIV. P. 12(b)(6).

## II.  STANDARD OF REVIEW

A motion under FED. R. CIV. P. 12(b)(6) tests the sufficiency of the claims pleaded in

a case.  On such a motion, the Court accepts as true all factual allegations in the

complaint. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,

507 U.S. 163, 164 (1993).  "Further, the court should construe the [pleading] liberally and

draw inferences from the [pleader's] allegations in the light most favorable to the

[pleader]."  Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing

Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)); see

Ofori-Tenkorang v. Am. Int'l Group, Inc., 460 F.3d 296, 298 (2d Cir. 2006)(When deciding

a motion to dismiss, the Court must "accept all factual allegations as true and draw all

reasonable inferences in plaintiff's favor.").

Recently, the Supreme Court redefined the standard for evaluating a Rule 12(b)(6)

motion. See Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167

L.Ed.2d 929 (2007).  In Twombly,  the Supreme Court "explicitly disavowed the oft-quoted

statement in [Conley v. Gibson] of 'the accepted rule that a complaint should not be

2

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(quoting Twombly, 127 S.Ct. at 1968 in turn quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court wrote that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Twombly, 127 S.Ct. at 1969.  Instead, on a Rule 12(b)(6) motion, the district court must determine whether Plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Id., at 1974.  In this regard, a district court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S.Ct. at 1965; see Barkley v. Olympia Mortgage Co., 2007 WL 2437810, at * 9 (E.D.N.Y. Aug. 22, 2007).

The Second Circuit has interpreted Twombly to require the district courts to apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal, 490 F.3d at 157-58 (emphasis in original).  "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007)(quoting Twombly, 127 S.Ct. at 1974).  Of course, a pleading that consists merely of legal conclusions without factual allegations supporting the conclusion is insufficient to state a plausible claim. See Amron v. Morgan

Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006)(concluding that, in resisting a motion to dismiss, "bald assertions and conclusions of law will not suffice"); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." ); 5A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)("[S]weeping legal conclusions cast in the form of factual allegations" do not suffice to state a claim even at the Rule 12(b)(6) stage.).

## III. BACKGROUND[1]

On November 11, 2003 at approximately 2:30 A.M., Plaintiff Nathaniel E. Bostic and his wife, Donna Capani-Bostic, had a domestic dispute at their home at 20 Jefferson Avenue, Binghamton, New York.  Am. Compl. at ¶¶ 33-36.   Plaintiff purportedly called "911" but hung up the telephone before speaking with an operator. Id.  ¶ 34.  Unknown to him, his wife also called "911" and requested police assistance. Id.  Defendant Binghamton Police Officer Carl Smith and another unnamed Binghamton Police Officer were dispatched to 20 Jefferson Avenue to respond to the 911 call.  Id. ¶¶ 35-36.  When the officers arrived, Plaintiff believed the officers were responding to his 911 call and, therefore, was "confused" when the officers accused him of assaulting his wife. Id. ¶ 37. He denied having hit, kicked or otherwise assaulted his wife, id. ¶ 38, and "calmly explained" that he had been assaulted by his wife because she had grabbed his testicles and twisted them. Id. ¶ 39.  He also told the officers his wife was mentally ill, with a history

---

[1]The factual allegations in the Amended Complaint, although disputed by Defendants, are accepted as true for purposes of this motion, and all reasonable inferences are drawn in favor of Plaintiff. They do not constitute findings of fact by the Court.  Only the facts relevant to the moving Defendants' motion are set forth in the text.

of lodging false complaints. Id.  Ms. Capani-Bostic told the officers that Plaintiff had

repeatedly slapped her and kicked her in the hand, and that she wanted Plaintiff arrested.

Id. ¶ 40.  Plaintiff contends that this statement was "demonstrably false and defamatory."

Id. ¶ 41.

  The two officers separately questioned Ms. Capani-Bostic and Mr. Bostic and the

Plaintiff believed that they were going to leave without making an arrest.  Id. ¶ 42.  One of

the officers told Ms. Capani-Bostic that she should not make false reports.  Id. ¶ 43.  Ms.

Capani-Bostic responded to this warning by cursing and yelling at Plaintiff and threatening

to kill him, allegedly causing an officer to warn Ms. Capani-Bostic that she would be

arrested if she did not calm down.  Id.  ¶ 44.  Ms. Capani-Bostic then stated to the officers:

"But he's (plaintiff) on parole."  Id. ¶ 45.[2]  "Officer Smith then, without reasonable cause to

believe that plaintiff had committed any crime, and without a warrant, took plaintiff into

custody by placing plaintiff in hand cuffs."  Id. ¶ 46.  Officer Smith pointed to a mark on

Ms. Capani-Bostic's forehead and stated, "Oh, he (plaintiff) did that right.  He hit you."  Id.

¶ 47.  Ms. Capani-Bostic responded in the affirmative. Id. ¶ 48.

  "Officer Smith arrested plaintiff merely because plaintiff was a parolee," id. ¶ 49,

and "Officer Smith also arrested plaintiff because plaintiff was a black man and the

accusations made against plaintiff were made by a white woman." Id. ¶ 50.  Plaintiff

complains that (1) Smith failed to "confirm plaintiff's distress call to 911 and the police

dispatch record of prior visits to plaintiff's home," id. ¶ 51; (2) Smith failed to interview Ms.

Capani's daughter who purportedly witnessed the alleged assault by Plaintiff, id. ¶ 52; (3)

---

[2]The Plaintiff was on parole from a conviction for robbery in the third degree and criminal contempt in the first degree. Am. Compl. ¶¶ 27,  32.

"a reasonable police officer would not conclude that the small discolored area on Ms. Capani-Bostic's face was evidence of any crime committed by plaintiff," id. ¶ 53, and (4) Smith failed to "record Ms. Capani-Bostic's threats and outbursts against plaintiff in the police report, which would serve as exculpatory evidence sufficient to eliminate probable cause as to any of the crimes charged." Id. ¶ 55.

Officer Smith transported Plaintiff to the Broome County Sheriff's Department on the charge of Assault in the Third Degree, a class A misdemeanor, and Ms. Capani-Bostic provided a supporting deposition. Id. ¶¶ 55-56. Plaintiff contends that the supporting deposition was "false and defamatory," id. ¶ 56, and that Ms. Capani-Bostic and Officer Smith were aware at the time that the allegations were false. Id. ¶ 58. Plaintiff further contends that "[o]n the request of Officer Smith, a warrant for parole violation . . . was issued against plaintiff." Id. ¶ 59.

On November 13, 2003, Plaintiff was arraigned in the Binghamton City Court on the criminal charge of Assault in the Third Degree, pled not guilty, and was granted bail. Id. ¶¶ 60-61.[3] On November 14, 2003, a preliminary hearing was conducted on Plaintiff's parole violation warrant. Id. ¶ 63. "[I]t was determined, upon the offered false and defamatory testimony of defendant Officer Smith and Ms. Capani-Bostic, that probable cause existed to believe that plaintiff had committed a violation of the conditions of his parole." Id. Plaintiff was held in custody pending his final parole revocation hearing. Id. ¶¶ 63-65.

---

[3]It appears from the allegations in the Amended Complaint that a detainer was lodged against Plaintiff based on the parole violation warrant and, therefore, he could not be released on the Binghamton City Court's bail on November 13, 2003.

6

The only factual allegations against Defendant Fian appear in paragraphs 111 and 112 of the Amended Complaint.  There it is alleged:

111.    On April 19, 2004, a felony information was lodged against plaintiff by defendant Officer J. Fian, citing criminal contempt in the first degree, Docket No. 2004-81200.

112.    The felony information lodged against plaintiff on April 19, 2004, Docket No. 2004-81200 was dismissed for reasons of justice and pursuant to plaintiff's CPL 30.20 right to a speedy trial.

The misdemeanor charge filed by Officer Smith as a result of the November 12, 2003 incident was also eventually dismissed "for reasons of  justice and pursuant to the Plaintiff's CPL 30.20 right to a speedy trial." Id.  ¶ 113.

## IV.  PLAINTIFF'S CLAIMS

While the Amended Complaint consists of an abundance of factual allegations (many of which appear superfluous at the pleading stage), the particular  legal claims asserted in the Amended Complaint are hard to discern.   The claims, set forth in five "causes of action," are painted in broad strokes asserting violations of numerous statutes and rights, and are alleged against various and several defendants at one time.  There is little definition in each cause of action such to give Defendants fair notice of the claims against them.[4]  Defendant J. Fian is not named in the caption or in the body of any of the causes of action in the Amended Complaint.

---

[4]Although Defendants have not asserted that the Amended Complaint violates Fed. R. Civ. P.  8, it comes very close to doing so because of the ambiguity in the various causes of action.  See FED. R. CIV. P. 8(a)(2)(Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."); Swierkiewicz v. Srema,  122 S.Ct. 992, 998 (2002)("Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'")(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

**a.  First Cause of Action**

The caption for the First Cause of Action indicates that it is brought against Defendant Smith and non-moving Defendant Broome County Sheriff David E. Harder. See Am. Compl. p. 18.   The caption further indicates that the First Cause of Action is for "False Arrest, Libel."  Id.   However, the body of the First Cause of Action asserts that Plaintiff  was "arrested without probable cause, unlawfully detained, imprisoned without due process of law, subjected to malicious prosecution, abuse of process and intentional infliction of emotional distress" in violation of his rights secured by the Fourth, Fifth, and Fourteenth Amendments to the Constitution, and by New York State law. Id. ¶¶ 116-117.[5]

Plaintiff alleges in this cause of action that "Defendant Smith filed the information against plaintiff with full knowledge of the falsity of the supporting deposition and the negative consequences to plaintiff," id. ¶ 118, and that  "Defendant Officer Smith was hostile, reckless, and/or callously and deliberately indifferent to the truth and to plaintiff's Constitutional rights as alleged herein, and offered the alleged assault as a pretext for plaintiff's unlawful arrest." Id. ¶ 119.   Plaintiff contends that "Defendant Officer Smith[] acted under color and pretense of law, to wit: under color of statutes, ordinances, regulations, customs and usages of the defendants City of Binghamton, the BPD, and defendant Broome County Sheriff's Department." Id. ¶ 120. The First Cause of Action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and "the laws and statutes of the State of New York."  Id. ¶¶ 116, 120.

---

[5]The captions for the Fourth and Fifth Causes of Action indicate that these causes of action consist of claims for "Abuse of Process, Malicious Prosecution." Am. Compl.  p. 21, p. 22..

### b.  Second Cause of Action

In the Second Cause of Action, Plaintiff alleges, *inter alia*, that it is "the policy and practice of . . . the City of Binghamton . . . to detain, without regard to probable cause, any individual accused of misconduct and identified as a parolee." Id. § 122.  Plaintiff further alleges that Defendant Smith "acted under color and pretense of law, * * *; that defendants here, separately and in concert, engaged in the illegal and discriminatory conduct above mentioned to the injury of the plaintiff and deprived plaintiff of his rights under the Constitution and laws of the United States." Id. ¶ 123.  Plaintiff further contends in the Second Cause of Action that "[t]he reckless actions of these defendants[] resulted in a distortion and corruption of the process of law and violated plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. §§ 1981, 1983, 1985, 1986) and arising under the Laws and statutes of the State of New York."  Id. ¶ 124.

### c.  Third Cause of Action

In the Third Cause of Action, Plaintiff alleges that it is "the policy and practice of . . . the City of Binghamton . . . to inadequately and improperly investigate complaints of domestic violence and assault made by white alleged victims against black alleged perpetrators." Id. ¶127.   "Although defendants knew or should have known of the fact that illegal patterns of conduct were carried out by their agents, servants, and employees, the defendants, City of Binghamton, the BPD, and defendant Broome County Sheriff's Department, have not taken any steps nor any efforts to halt this course of conduct . . . ." Id. ¶ 128.  "The reckless actions of these defendants[] resulted in a distortion and

corruption of the process of law and violated plaintiff's rights under the Fourth, Fifth, and

Fourteenth Amendments to the Constitution of the United States (42 U.S.C. §§ 1981,

1983, 1985, 1986) and arising under the Laws and statutes of the State of New York." Id.

¶ 129.  While Officer Smith's name appears in the caption of the Third Cause of Action,

there are no allegations against him in the body of the Third Cause of Action.

### d.  Fourth Cause of Action

The caption for the Fourth Cause of Action, which indicates that it consists of

claims for "Abuse of Process, Malicious Prosecution," names the City of Binghamton, the

Binghamton Police Department, and other non-moving defendants. Id. p. 21.  However,

the body of the Fourth Cause of Action does not allege any action by the City of

Binghamton or any City of Binghamton actor. Id. ¶¶ 130-133.  The Binghamton City Court

is named as a defendant in the caption and body of the Fourth Cause of Action, leading

the Court to conclude that Plaintiff's counsel mistakenly believed that the Binghamton City

Court is an agency of the City of Binghamton.  It is not.  The Binghamton City Court is part

of New York's Unified Court System and, as such, is an agency of the State of New York.

See N.Y. Const., art. VI, § 1[a]; Garcha v. City Court (City of Beacon), 833 N.Y.S.2d 611,

612-13 (2d Dept. 2007).

### d.  Fifth Cause of Action

The caption for the Fifth Cause of Action, which also indicates that it consists of

claims for "Abuse of Process, Malicious Prosecution," names the City of Binghamton, the

Binghamton Police Department, and other non-moving defendants.  Id. p. 22.  Like the

Fourth Cause of Action, the body of the Fifth Cause of Action lacks any allegation against

the City of Binghamton or any City of Binghamton actor. Id. ¶¶ 134-138.

**V.  DISCUSSION**

> ### a.  Claims Against Defendant J. Fian

There are no factual allegations against Defendant J. Fian that would support a plausible claim for recovery.  The Amended Complaint merely alleges that Defendant Fian filed a felony information against Plaintiff for criminal contempt in the first degree and that the charge was dismissed for "reasons of justice" and pursuant to Plaintiff's CPL § 30.20 right to a speedy trial.  There are no allegations that Defendant Fian acted for an improper reason in filing the felony information, or that his actions were unjustified.  The fact that the criminal charges were later dismissed does not, in and of itself, amount to a violation of person's rights.  Further, Defendant Fian is not named in the delineated causes of action.

Simply stated, the Amended Complaint does not assert a plausible claim that Defendant Fian violated Plaintiff's federal or state rights.  Accordingly, all claims against Defendant Fian are **DISMISSED**.

> ### b.  False Arrest Claims against Defendant Smith

Next, Defendants argue that the state and federal false arrest claims[6] asserted against Defendant Smith must be dismissed because, by the allegations in the Amended Complaint, there existed probable cause to arrest Plaintiff.   In the alternative, Defendants assert that Defendant Smith is entitled to qualified immunity.  Plaintiff opposes the motion, contending that factual question exist on the question of probable cause and the

---

[6]Defendants do not argue that any malicious prosecution claim asserted against Defendant Smith in the first three causes of action should be dismissed.  Therefore, the Court offers no opinion on the viability of such a claim or claims.

reasonableness of Defendant Smith's actions.

### 1. Probable Cause

The existence of probable cause is a complete defense to claims under Section 1983 and state common law sounding in false arrest and false imprisonment.  See Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003)("If probable cause existed, [Defendant] as a police officer would be privileged to make an arrest."); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999)("It is well established that appellant's Section 1983 claims against appellees for false arrest and false imprisonment must fail if the appellee-officers had probable cause to arrest him."); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)(probable cause is a complete defense to both federal and state law claims for false arrest and false imprisonment).  Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999).  The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)(In evaluating the

probable cause determination, the Court "consider[s] the facts available to the officer at the time of the arrest.")(citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)). The probable cause inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. Devenpeck, 125 S. Ct. at 593-94; Whren v. United States, 517 U.S. 806, 813 (1996); Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000). The "actual motivations of the individual officers involved" in a detention "play no role" in the analysis. Whren, 517 U.S. at 813.

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Miroslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd 993 F.2d 1534 (2d Cir. 1993)). Police officers may also rely upon information gained from other officers in making their probable cause assessment. See Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003)("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, "'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.'")(quoting Illinois v. Andreas, 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)). Probable cause can exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Colon v. City of New York, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N .E.2d 1248 (N.Y.1983)).

"A probable cause determination does not require proof beyond a reasonable

13

doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995); see Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)(The existence of probable cause must be determined on the basis of the totality of the circumstances). "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn, 820 F. Supp. at 55 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).

Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the court as a matter of law. Weyant, 101 F.3d at 852.  Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest. Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998). However, where there are "genuine issues" as to any material facts surrounding the issue of probable cause such that it can be said that the question of probable cause is "predominately factual in nature," the determination should be made by a jury. Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998).

Here, Plaintiff's pleading comes precariously close to establishing that probable cause existed to arrest him.  The facts, as alleged by Plaintiff, establish that police officers were summoned by a 911 distress call to a domestic dispute at 2:30 AM.  While both Plaintiff and his wife made allegations against the other, Plaintiff's wife demanded that Plaintiff be arrested.  She further asserted that Plaintiff had struck her numerous times, and stated that a mark on her forehead was caused by Plaintiff.   She also gave a sworn deposition in support of her allegations. These allegations seemingly establish probable

14

cause to believe that Plaintiff engaged in assaultive behavior toward Ms. Capani-Bostic. Thus, even if Officer Smith was mistaken in the assessment of whether Plaintiff's conduct constituted a violation of New York State Penal Law § 120.00,[7] there was still probable cause to make an arrest.

The one troubling aspect of the analysis, however, is that Plaintiff alleges that Ms. Capani-Bostic's allegations were "demonstrably false" and that Defendant Smith was aware at the time that the allegations were false. Am. Compl. ¶ ¶ 41 & 58. While such conclusory allegations would be insufficient to defeat a properly supported motion for summary judgment, the Court must accept the allegations as true at this stage of the proceedings and indulge the possibility that Plaintiff could establish that Defendant Smith was aware that Ms. Capani-Bostic's allegations were false. Doing so defeats the motion on the false arrest claims. The motion in this regard is **DENIED.**

### 2. Qualified Immunity

_____That part of the motion seeking qualified immunity for Defendant Smith on the federal false arrest claim must also be denied at this time. As the Second Circuit has noted:

a defendant presenting an immunity defense on a Rule 12(b)(6) motion

---

[7]Under New York Penal Law § 120.00, a person is guilty of assault in the third degree when:

1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or

2. He recklessly causes physical injury to another person; or

3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

N.Y. Penal L. § 120.00. A "physical injury" is defined by New York Penal Law section 10.00(9) to mean "impairment of physical condition or substantial pain."

> instead of a motion for summary judgment must accept the more stringent
> standard applicable to this procedural route.  Not only must the facts
> supporting the defense appear on the face of the complaint, but, as with all
> Rule 12(b)(6) motions, the motion may be granted only where it appears
> beyond doubt that the plaintiff can prove no set of facts in support of his
> claim that would entitle him to relief.  Thus, the plaintiff is entitled to all
> reasonable inferences from the facts alleged, not only those that support his
> claim, but also those that defeat the immunity defense.

McKenna v. Wright, 386 F.3d 432, 436 (2d. Cir 2004)(citations and quotation marks

omitted); see Walker v. Mendoza, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)("It is

generally premature to address the defense of qualified immunity in a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).").

It was clearly established at all relevant times that a police officer could not

effectuate a warrantless arrest of a person unless the officer possessed probable cause to

believe that the person committed some crime. Lowth v. Town of Cheektowaga, 82 F.3d

563, 569 (2d Cir. 1996).  Accepting as true Plaintiff's allegations that Defendant Smith

arrested Plaintiff under circumstances where it was clear that no probable cause existed,

Defendant cannot establish his entitlement to qualified immunity.  See Locurto v. Safir,

264 F.3d 154, 169 (2d Cir. 2001)("[I]t can never be objectively reasonable for a

governmental official to act with the intent that is prohibited by law.").  While the facts that

may be established through discovery might lead to the conclusion that Defendant Smith

possessed actual or arguable probable cause to arrest Plaintiff, that determination will

have to await a summary judgment motion or trial.  See Jackson v. New York State, 381 F.

Supp.2d 80, 91 (N.D.N.Y. 2005)("Plaintiff alleges violations of her constitutional rights and,

based on the complaint alone, it does not appear that defendants' actions were objectively

reasonable.  Further factual information is necessary, therefore, to determine whether

16

defendants are entitled to qualified immunity."); <u>Middleton v. City of New York</u>, 2006 WL

1720400, at *12 (E.D.N.Y.  June 19, 2006)(Denying qualified immunity on a Rule 12(b)(6)

motion because there was "insufficient information at this early stage to determine whether

the conduct of the individual officers in this case is protected by qualified immunity.");

<u>Levine v. Lawrence</u>, 2005 WL 1412143, at *10 (E.D.N.Y. June 15, 2005)("Defendants

argue that dismissal of Levine's claims against Janosek are warranted under the doctrine

of qualified immunity.  Because this defense similarly turns on facts not apparent from the

face of Levine's complaint, dismissal on the basis of qualified immunity is premature.").

Accordingly, that portion of Defendants' motion seeking qualified immunity for Defendant

Smith is **DENIED .**

### c.  Section 1981 Claim

Defendants next move to dismiss Plaintiff's claim brought pursuant to 42 U.S.C. §

1981.

> In order to assert a claim under 42 U.S.C. § 1981, a plaintiff must allege that:
> (1) []he is a member of a racial minority;  (2) the defendants had an intent to
> discriminate against [him] on the basis of race;  and (3) the discrimination
> concerned one or more of the activities enumerated in the statute, including
> the making and enforcing of contracts.  <u>See</u>, <u>e.g.</u>, <u>Mian v. Donaldson, Lufkin
> & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir.1993).  To survive a
> motion to dismiss, "the plaintiff must specifically allege the events claimed to
> constitute intentional discrimination as well as circumstances giving rise to a
> plausible inference of racially discriminatory intent."  <u>Yusuf v. Vassar Coll.</u>,
> 35 F.3d 709, 713 (2d Cir. 1994);  <u>see also</u> <u>Albert v. Carovano</u>, 851 F.2d 561,
> 571-72 (2d Cir. 1988).  "It is well settled in this Circuit that a complaint
> consisting of nothing more than naked assertions, and setting forth no facts
> upon which a court would find a violation of the Civil Rights Acts, fails to
> state a claim under Rule 12(b)(6)."  <u>Martin v. N.Y. State Dep't of Mental
> Hygiene</u>, 588 F.2d 371, 372 (2d Cir. 1978).

<u>Mahmud v. Kaufmann</u>, 496 F. Supp.2d 266, 272-73 (S.D.N.Y. 2007).

Subsection (a) of Section 1981 insures that "[a]ll persons within the jurisdiction of the United States shall have . . .  full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  Plaintiff asserts that Officer Smith arrested him because he "was a black man and the accusation made against plaintiff were [*sic*] made by a white woman."  Am. Compl.  ¶ 50.  This allegation, together with Plaintiff's assertions that there was no probable cause for his arrest on November 11, 2003, raises an inference of intentional discrimination by Smith.  While Plaintiff also asserts that Smith arrested him because he was on parole, see id. ¶ 49, his allegation that he was arrested based upon considerations of his race is sufficient to establish a raced-motivated denial of his Fourth Amendment protections.  This is sufficient to assert a plausible claim under Section 1981(a).  Accordingly, Defendants' motion in this regard is **DENIED**.

**d.   Section 1985(3) claim**

Defendants also seek to dismiss Plaintiff's Section 1985(3) claims. Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws.  Barkley v. Olympia Mortg. Co.,  2007 WL 2437810, at * 10 (E.D.N.Y. Aug. 22, 2007).  In order to prevail on a § 1985(3) claim, Plaintiff must establish four elements:

> (1) a conspiracy;  (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087-88 (2d Cir.

1993)(quoting <u>United Bd. of Carpenters, Local 610 v. Scott</u>, 463 U.S. 825, 828-29 (1983)).

A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999) (quoting <u>LeBlanc-Sternberg v. Fletcher</u>, 67 F.3d 412, 427 (2d Cir. 1995)).  However, complaints that "contain[ ] only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002) (quoting <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir.1993)); <u>see also</u> <u>Aikman v. County of Westchester</u>,  491 F. Supp. 2d 374, 383 (S.D.N.Y. 2007).[8]  Also, "a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." <u>Thomas v. Roach</u>, 165 F. 3d 137, 147 (2d Cir. 1999).   "Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [his] employment, are legally incapable of conspiring together." <u>Little v. City of New York</u>, 487 F. Supp. 2d

---

[8]   A claim of a conspiracy to violate civil rights requires a detailed fact pleading to withstand a motion to dismiss.  <u>Angola v. Civiletti</u>, 666 F.2d 1, 4 (2d Cir. 1981).  Further, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed;  diffuse and expansive allegations are insufficient ..." to defeat a motion to dismiss.  <u>Dwares v. New York</u>, 985 F.2d 94, 100 (2d Cir.1993) (internal quotations and citations omitted).

<u>Aikman v. County of Westchester</u>,  491 F. Supp. 2d 374, 383 (S.D.N.Y. 2007).

426, 441-42 (S.D.N.Y. 2007)(citations omitted).  Police officers of a single police

department are part of a single corporate entity and, therefore, legally incapable of

conspiring among themselves. Id. at 442.

    While, on the facts alleged in the Amended Complaint, a fact finder could plausibly

conclude that Defendant Smith's action of arresting Plaintiff without probable cause was

motivated by racial animus, there are no allegations that Smith came to an understanding,

tacit or otherwise, with anyone to carry out the arrest for such a purpose.  Plaintiff's

contention in the Second Cause of Action that "defendants here, separately and in

concert, engaged in the illegal and discriminatory conduct above mentioned" is nothing

more than a "conclusory, vague, or general allegation[] that the defendants have engaged

in a conspiracy to deprive the plaintiff of his constitutional rights" and is insufficient to form

the predicate for a Section 1985(3) conspiracy. Ciambriello, 292 F.3d at 325; see

Twombly, 127 S.Ct. at 1966 ("[C]onclusory allegation[s] of agreement at some unidentified

point do[ ] not supply facts adequate to show illegality.");  In re Elevator Antitrust Litigation,

502 F.3d at 50 ("We affirm the district court's dismissal of the conspiracy claims because

plaintiffs are unable to allege facts that would provide 'plausible grounds to infer an

agreement.'")(quoting Twombly, 127 S.Ct. at 1965).   Plaintiff's argument on this point in

his Memorandum of Law is no more enlightening than the Amendment Complaint and, like

the Amended Complaint, contains only conclusory allegations.   Accordingly, the Section

1985(3) claims arising from Plaintiff's arrest are dismissed.

    Although unclear from the Amended Complaint, Plaintiff may be asserting that

Defendant Smith conspired with someone outside the Binghamton Police Department,

possibly Defendant John Lattimer, a New York State Division of Parole "revocation

specialist," to deprive him of his right to be free from malicious prosecutions.   While this possibility exists, the pleadings are insufficient to establish a plausible Section 1985(3) claim because there is no allegation that any of the defendants came to understanding to deprive Plaintiff of his constitutional rights on account of his race by maliciously prosecuting him, or that the defendants engaged in overt acts reasonably related to the promotion of the claimed conspiracy.  Thus, to the extent a Section 1985(3) conspiracy claim is asserted relative to a claim of malicious prosecution, the claim is also dismissed.

If Plaintiff possesses facts which, in good faith and consistent with the requirements of Fed. R. Civ. P. 11, could plausibly establish a Section 1985(3) conspiracy arising from his arrest or prosecutions, Plaintiff may re-plead the claim(s) in a Second Amended Complaint to be filed no later than twenty (20) days after the date of this Decision and Order.

### e.  Section 1986 Claim

Defendants also seek to dismiss Plaintiff's Section 1986 claims. "Section 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so."  Thomas, 165 F. 3d at 147 (citations and interior quotation marks omitted).  ""In order to establish a violation of Section 1986, a plaintiff must first establish a violation of Section 1985 which the Section 1986 defendant neglected to prevent." Pikulin v. Gonzales, 2007 WL 1063353 at * 3 (E.D.N.Y. April 5, 2007)(citing Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir. 1997) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim.")).

21

As Plaintiff has failed to state a valid Section 1985 claim, there is no basis for assertion of a claim under Section 1986.  Further, Plaintiff's Section 1986 claims are barred by the relevant statute of limitations. See Pikulin v. Gonzales, 2007 WL 1063353 at * 3.  Causes of action arising pursuant to Section 1986 must be brought within one year of accrual. 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").  Plaintiff's Section 1986 claims accrued in November of  2003 when, according to the Amended Complaint, he was arrested in the absence of probable cause and prosecuted on the false allegations.  Plaintiff commenced his action *pro se* on May 3, 2006.  Thus, even using the original commencement date, the Section 1986 claims are time-barred.  The Section 1986 claims are **DISMISSED WITH PREJUDICE**.

### f.   State Law Immunity

Defendants argue that the state law claims against them must be dismissed because they are entitled to good faith immunity under state law.

> New York good faith immunity provides that a government employee is immune from suit "for those government actions requiring expert judgment or the exercise of discretion ... when the action involves the conscious exercise of a judicial or quasi-judicial nature." Arteaga v. State, 532 N.Y.S.2d 57, 58-59 (1988). Whether the discretionary action receives absolute or qualified immunity turns on whether "the actor's position entails making decisions of a judicial nature." Id. at 59.In contrast, where a government employee performs duties ministerial or clerical in nature, no immunity attaches. Monv. City of New York, 574 N.Y.S.2d 529, 531-32 (1991). With respect to police officers, it has been held that the good faith immunity defense is a qualified immunity, to which the individual Defendants "would not be [entitled if] they undertook the prosecution of plaintiff[ ] unreasonably or in bad faith." Davis v. City of New York, 373 F. Supp.2d 322, 339 (S.D.N.Y.2005).  Similarly, "governmental immunity does not attach to every action of an official having discretionary duties but only to those involving an exercise of that discretion." Mon, 574 N.Y.S.2d at 532.

22

Bradley v. City of New York, 2007 WL 232945, at * 12 (S.D.N.Y. Jan. 26, 2007).

Because the allegations in the Amended Complaint, viewed in the light most favorable to Plaintiff, indicate that Smith and the City acted in bad faith, dismissal of the state law claims is inappropriate at this time. See id. ("Because there are disputed issues of fact regarding the reasonableness of Defendants' actions and whether those actions were taken in bad faith, summary judgment is inappropriate on this issue."). Accordingly, the motion in this regard is **DENIED**.

### g.  Fourth and Fifth Causes of Action

Finally, Defendants argue that the Fourth and Fifth Causes of Action must be dismissed as against them because there are no allegations in these causes of action that the City of Binghamton or any City of Binghamton actor did anything. The Court agrees.  It is axiomatic that, absent an allegation that a party played a part in bringing about a purported wrong, there can be no liability.   Inasmuch as there are no allegations against the City of Binghamton or any City of Binghamton actor in the Fourth and Fifth Causes of Action, those causes of action are **DISMISSED** as to the moving Defendants.

## VI.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [dkt. # 45] is **GRANTED IN PART and DENIED IN PART**. In this regard, Defendants' motion is **GRANTED** inasmuch as:

(a) All claims against Defendant Fian are **DISMISSED**;

(b) All claims brought pursuant to 42 U.S.C. § 1985(3) against the City of Binghamton, the Binghamton Police Department, and Carl Smith are **DISMISSED**.  If

23

Plaintiff possesses facts which, in good faith and consistent with the requirements of Fed. R. Civ. P. 11, could plausibly establish a Section 1985(3) conspiracy arising from his arrest or prosecutions, Plaintiff may re-plead the claim(s) in a Second Amended Complaint to be filed no later than twenty (20) days after the date of this Decision and Order;

(c) All claims brought pursuant to 42 U.S.C. § 1986 against the City of Binghamton, the Binghamton Police Department, and Carl Smith are  **DISMISSED**.

(d) All claims brought in the Fourth and Fifth Causes of Action against the City of Binghamton, the Binghamton Police Department, and Carl Smith are **DISMISSED**.

Defendants' motion is, in all other respects, **DENIED**.

**IT IS SO ORDERED**.

DATED:   December 20, 2007

Thomas J. McAvoy
Senior, U.S. District Judge