UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NATHANIEL E. BOSTIC,

        Plaintiff,

   v.                                      3:06-CV-540
                                               TJM/DEP

DAVID E. HARDER, Sheriff of Broome County Jail;
MARK SMOLINSKY, Jail Administrator; ROBERT
DENNISON, Chairman, New York State Division of Parole;
AL SIMONS, Parole Area Supervisor; JOHN LATTIMER,
Parole Revocation Specialist; CARL SMITH, Police Officer
of the City of Binghamton; CITY OF BINGHAMTON
POLICE DEPARTMENT; CITY OF BINGHAMTON;
COUNTY OF BROOME; and COUNTY OF BROOME,
CITY OF BINGHAMTON UNKNOWN MEMBERS,

        Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge

**DECISION & ORDER**

**I.    INTRODUCTION**

Plaintiff, who is proceeding *pro se*,[1] commenced this action on May 3, 2006 asserting claims against various Defendants based upon events arising from his arrest on November 11, 2003 for striking his wife. See Compl. dkt. # 1. This Court issued two prior decisions dismissing certain claims pursuant to Fed. R. Civ. P. 12(b)(6), see dkt. #s 14 &

---

[1] Plaintiff had an attorney at one point in this litigation but the attorney was allowed to withdraw.

1

57, familiarity with which is assumed, and Plaintiff was granted permission to file a second Amended Complaint. See Ord., dkt. # 70. The second Amended Complaint ("Amended Complaint") was filed on April 21, 2008. See dkt. # 71. Thereafter, Plaintiff was ordered to "forward a copy of the amended complaint to counsel for the parties who have appeared in the action, and to provide the requisite USM-285 forms and number of copies of the complaint and supplemental summons, to be issued by the court, to the United States Marshal for service upon" the other named Defendants. Ord., dkt. # 73. Defendants David E. Harder, Mark Smolinsky, the Broome County Sheriff's Department, and the County of Broome have not appeared in this action and there exists no proof in the record of service of the summons and Amended Complaint upon them, or compliance with the Court's instructions to forward necessary documents to the United States Marshal for service.

The New York State Defendants that remain in this action (John Lattimer, Al Simons, and Robert Dennison), and the City of Binghamton Defendants (Carl Smith, the City of Binghamton, and City of Binghamton Police Department) move pursuant to Fed. R. Civ. P. 56 to dismiss the claims against them. See State Def. Mot., dkt. # 89; City Def. Mot., dkt. # 90. Plaintiff has opposed the pending motions. See dkt. # 96.[2] For the

---

[2] At docket entry # 96-2, Plaintiff submits a response to the State Defendants and the City Defendants' Local Rule 7.1(a)(3) Statements of Material Facts. At docket entry # 96-3, Plaintiff contends that the State Defendants' motion was "defective" because he did not receive a Memorandum of Law. Counsel for the State Defendants then wrote to the Court (letter dated June 30, 2009) indicating that he sent another copy of the memorandum of law to Plaintiff but nonetheless requested an adjournment of the motion return date. See dkt. # 97. On July 1, 2009, the Court denied the request for an adjournment; instructed the State Defendants' attorney to serve another copy of the memorandum of law on Plaintiff; indicated to the parties that there would be no oral argument on the July 14, 2009 return date of the motion; and advised Plaintiff that if he wished to supplement his opposition to the State Defendants' motion, he must notify the court in writing by July 13, 2009 and that, if he did so notify, the Court would consider an adjournment at that time. Dkt. # 98. Plaintiff has not notified the Court of a desire to supplement his papers.

reasons that follow, the motions are granted.

## II.     BACKGROUND

The following facts relevant to the pending motions are not in dispute.[3]

At approximately 2:15 AM on November 12, 2003, both the Plaintiff and his wife called 911. Plaintiff hung up before his call was answered, but his wife, Donna Capani, asserted that she had been assaulted. Two City of Binghamton police officers were dispatched to Plaintiff's apartment in the City of Binghamton. The officers learned that Plaintiff and his wife had been arguing. Plaintiff was angry and yelling because he believed his wife was verbally abusing him. One officer interviewed Plaintiff in the living room, while Defendant Officer Smith interviewed Ms. Capani in the kitchen. The Plaintiff could not hear what was said between Officer Smith and Ms. Capani. After the officers conferred with Plaintiff and his wife, Plaintiff was told that his wife had asserted that he had struck her on the head, that Officer Smith had observed a red mark on his wife's forehead, and that he was being placed under arrest for striking is wife. Plaintiff insisted that he had not struck his wife, contending instead that the mark was caused by his wife sleeping on her hand.

Plaintiff was transported to the Binghamton Police Department where he was formally charged by Defendant Smith with assault in the third degree of his wife, Donna

---

[3] Plaintiff has admitted all allegations in the State Defendants' 67-paragraph Local Rule 7.1(a)(3) Statement of Material Facts, see dkt. # 96-2, p. 2, and has admitted all of the allegations, except for those contained in 5 paragraphs, of the County Defendants' 105-paragraph Local Rule 7.1(a)(3) Statement of Material Facts. Id. p. 1. However, the 5 denials consist merely of the word "deny," and do not satisfy the Local Rules that require each denial to "set forth a specific citation to the record where the factual issue arises." N.Y.N.D.L.R. 7.1(a)(3). Further, the denials are to allegations that are either irrelevant to the City Defendants' motion, or are supported by citations in the State Defendants Local Rule Statement. Compare City Defs LR. Stat. ¶ 67 with State Defs. L.R. Stat. ¶ 26.

3

Capani. Ms. Capani signed a supporting deposition asserting that Plaintiff had struck her on the forehead. At the time, Plaintiff was on parole for his 1999 state court conviction of robbery and had only recently been released to parole supervision from his sentence of three and one-half to seven years incarceration. After being processed, Plaintiff was arraigned before the Binghamton City Court and his bail was set at $2,500.00.

The next day, Plaintiff received a notice of parole violation issued by his Parole Officer, Sharon Brown, and a parole violator's warrant was issued. In response to the parole violator's warrant, Plaintiff requested a preliminary parole revocation hearing. The hearing, which was to determine whether there was probable cause to proceed with a final parole revocation hearing, was conducted on November 20, 2003. Plaintiff was represented by counsel. At the hearing, Officer Smith, Donna Capani and Parole Officer Sharon Brown testified against Plaintiff. Plaintiff's counsel was afforded the opportunity to cross-examine the witnesses. Plaintiff chose not to testify.

At the conclusion of the hearing, Hearing Officer Lumina Pomerleau found that there was probable cause to proceed with a final revocation hearing. In her decision, Hearing Officer Pomerleau stated:

> I find that there is probable cause to believe that on 11/12/03 at approximately 2:15 AM at 20 Jefferson Avenue, City of Binghamton, NY, you struck your wife Donna Capani in the face causing a bruise on her forehead as well as pain and discomfort, which constitutes a violation of Parole Rule # 8.[4] My findings and conclusions are based upon [State Exhibit] # 1 and the reliable testimony of P.O. Brown, Carl Smith and Donna Capani.

Plaintiff's criminal assault charge was later reduced to second degree harassment.

---

[4] In Parole Rule # 8, Plaintiff had agreed not to violate any law that would subject him to prison and not to endanger the safety of himself or others.

See Bostic v. Harder, 05-CV-79, May 22, 2008 Rep. Rec., p. 2 (N.D.N.Y.)(Treece, M.J.)(recommending denial of Bostic's habeas corpus petition, which asserted that he was unconstitutionally held because he did not receive a timely final parole revocation hearing or criminal trial, because he had been released from incarceration), adopted by Decision and Order dated July 2, 2008 (Kahn, J.).  Petitioner's trial on the harassment charge began on January 14, 2004.  However, the presiding judge stopped the trial and adjourned the proceeding after Plaintiff, who insisted on representing himself, starting calling Officer Smith a "f * * king liar" during cross-examination, and stated to the judge: "What kind of trial is this? You're all violating my rights.  You're all playing with my rights, man."  Trial Trans., p. 13. The City Court inquired of the Division of Parole of its intentions regarding the parole violator's warrant, and adjourned the criminal matter pending a determination by the Division of Parole on the parole violation.

In May 2004, two more charges asserting parole violations were brought against Plaintiff by Defendant John Lattimer, a Parole Revocation Specialist.  The two charges were listed as charge number 3 and charge number 4.  Charge number 3 alleged that, while being held in the Broome County Jail on the original violation warrant, Plaintiff violated Parole Rule # 8 by writing Ms. Capani "contrary to an active order of protection issued out of Binghamton City Court."  Charge number 4 alleged that Plaintiff "violated rule 12-18, a board-imposed special condition to comply with all orders of protection, when [Plaintiff] sent a letter to Donna M. Capani contrary to an active order of protection issued out of Binghamton City Court."

Plaintiff's final parole revocation hearing was scheduled to take place on March 9, 2005.  On this date, while the parties were before the administrative law judge, the

5

Division of Parole requested an adjournment because Ms. Capani was not available as a witness. Plaintiff, who was represented by counsel, objected to the adjournment. There was a discussion on the record concerning the numerous adjournments leading up to the final revocation hearing. Plaintiff contended that at least one of the prior adjournments was attributable to Parole. The administrative law judge reviewed all prior adjournment requests in the case and stated that all had been at the request of Plaintiff's counsel. In addition, Plaintiff challenged the timeliness of the hearing on March 9, 2005. The administrative law judge ruled that the hearing was timely, finding that "the Division of Parole was well within the 90 days which they normally would have to bring a final revocation hearing. . . ." The administrative law judge adjourned the hearing for one week and charged the final adjournment to Parole.

On March 16, 2005, the final parole revocation hearing took place. Plaintiff was represented by counsel. At the hearing, pursuant to a plea agreement, Plaintiff pled guilty to charge number 3 in full satisfaction of all pending charges. Plaintiff admitted there was a factual basis for the plea. The administrative law judge accepted the guilty plea and withdrew charges number 1, 2, and 4 in accordance with the parties' plea agreement.

During the hearing, Plaintiff had a discussion with the judge concerning whether Plaintiff was a category three or a category one parolee. Plaintiff contended that he was a category three parolee. The administrative law judge ruled, however, that Plaintiff was a category one parolee because of the his robbery conviction. This meant, as Plaintiff concedes, that Plaintiff could be held in custody on the parole violator's warrant for up to 18 months. The administrative law judge ruled that Plaintiff would be held to his maximum parole expiration date, which had the practical effect of returning Plaintiff to parole

6

supervision on April 5, 2005.

The administrative law judge issued a written revocation decision that same day in which he accepted Plaintiff's guilty plea to charge number 3 in full satisfaction of all pending charges. In the decision, the administrative law judge also ruled that Plaintiff was a category one parolee.

On April 5, 2005, Plaintiff was returned to parole supervision. As a result, Plaintiff spent 510 days in custody on the parole violator's warrant from November 12, 2003 to April 4, 2005. To date, Plaintiff has not successfully challenged the parole revocation decision. Plaintiff was discharged from parole on October 8, 2005.

## III.   PLAINTIFF'S CLAIMS

In count I of the Amended Complaint, Plaintiff alleges that the Defendants, "through their conspiracy with one another," and in "in accordance with the official policy of the City of Binghamton Police Department," caused him to be unlawfully arrested in violation of his Fourth and Fourteenth Amendment rights. In count II, Plaintiff alleges that the State and City Defendants unreasonably delayed his final revocation hearing causing his continued incarceration in the Broome County Jail in violation of his Fourth and Fourteenth Amendment rights. In count III, Plaintiff alleges that the State and City Defendants kept him incarcerated beyond the time allowed for category three parole violators in violation of his Fourteenth Amendment rights. In count IV, Plaintiff alleges that Broome County officials or employees interfered with his legal mail while he was incarcerated at the Broome County Jail. In count V, Plaintiff alleges that the State and City Defendants retaliated against by keeping him incarcerated on the parole violator's warrant because he had previously brought various lawsuits.

## IV.     DISCUSSION

### a.     Count I

"Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'"  Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953, at * 4 (E.D.N.Y. June 30, 2009)(quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996)). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim. Jaegly v. Couch, 439 F.3d 149, 152 (2nd Cir. 2006).  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (citations omitted).

> Following [Devenpeck v. Alford, 543 U.S. 146, 125 S .Ct. 588 (2004)], we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each charge, or, indeed any charge actually invoked by the arresting officer at the time of the arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge.
>
> * * *
>
> We thus hold, following Devenpeck, that a Plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the officer at the time of the arrest.

Jaegly, 439 F.3d at  154.

"Whether probable cause exists depends upon the reasonable conclusion to be

8

drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 125 S. Ct. 588, 593)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999).  "A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995).  "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn, 820 F. Supp. at 55 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Miroslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd 993 F.2d 1534 (2d Cir. 1993)).  "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable . . . merely because it later turns out that the complaint was unfounded." Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997); see Calderola v. Calabrese, 298 F.3d 156, 165 (2d Cir. 2002)("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case.").  Police officers may also rely upon

9

information gained from other officers in making their probable cause assessment. See Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003). Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); see Hotaling v. LaPlante, 67 F. Supp. 2d 517, 522 (N.D.N.Y. 2001)(valid probable cause to arrest rested upon information supplied by an identified witness, and even though a further investigation by the Trooper would have led to a contradictory conclusion, Trooper's conduct was not unreasonable under the circumstances). Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Based on the undisputed evidence that Donna Capani told Officer Smith that Plaintiff had struck her in the forehead and caused a mark that Officer Smith observed, Smith had probable cause to arrest Plaintiff for the crime of attempted assault in the third degree. See N.Y. Penal L. §§ 110.00, 120.00[1]; People v. Travis, 266 A.D.2d 410, 411, 698 N.Y.S.2d 293, 293-4 (2d Dep't 1999).[5]

Further, the determination by the administrative law judge at the preliminary parole revocation hearing finding that there was probable cause to believe that Plaintiff struck his wife such to violate one of Plaintiff's parole conditions is identical to the probable cause determination that is decisive of the false arrest claims asserted in Count I. The issue was

---

[5] ("The police officer who interviewed the victim could reasonably infer that she suffered physical injury based on his observation of her injuries and her allegation that the defendant threw her to the ground and punched her in the face. * * * In any event, the objective facts known to the officer were sufficient to establish probable cause to arrest the defendant for attempted assault in the third degree, a class B misdemeanor, as the fact that no physical injury was inflicted is not a defense to that charge * * *.")

10

necessarily decided and material in the preliminary parole revocation hearing, and Plaintiff, who was represented by counsel, had a full and fair opportunity to litigate the issue in the earlier action.  Therefore, the doctrine of collateral estoppel prevents Plaintiff from re-litigating that issue here. See University of Tennessee v. Elliot, 478 US 788, 106 S. Ct. 3220 (1986)("Accordingly, we hold that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' * * * federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts."); Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 79 (1984)(Federal courts rely on state law principles of collateral estoppel when determining the preclusive effect of a state court decision); Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004);[6] Curry v. City of Syracuse, 316 F.3d 324, 331-332 (2d Cir. 2003).[7]

Still further, because there was reasonable cause to believe that Plaintiff committed the family offense of attempted assault of his spouse, see N.Y. Crim. Proc. L. § 530.11, and because Ms. Capani did not request that Plaintiff not be arrested, a reasonable officer in Officer Smith's position would have believed that he was obligated to arrest Plaintiff

---

[6]("Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same. New York courts will invoke the doctrine of collateral estoppel if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the earlier action.")(interior quotation marks, citations, and brackets omitted).

[7]("We have recently explained that under New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue 1) identical to an issue already decided, 2) in a previous proceeding in which that party had a full and fair opportunity to litigate * * * [3)]Additionally, the issue that was raised previously must be decisive of the present action.")

11

pursuant to N.Y. Crim. Proc. L. § 140.10.   Therefore, Officer Smith is entitled to qualified immunity.

Based on these conclusions, Plaintiff's claim of false arrest against Defendant Smith must be dismissed.   Because Plaintiff has not asserted an actionable violation of his federal constitutional rights arising from his arrest, his Section 1983 false arrest claims premised upon the theories of Monell liability and conspirator liability must also be dismissed. See Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008);[8] Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).[9]

### b.     Count II

Plaintiff alleges in Count II that, after his arrest and arraignment, Defendants detained him in the Broome County Jail for 465 day without "being brought before the City Court," that Defendants conspired to delay his parole revocation hearing such to keep him incarcerated, and that "such detention without judicial review [was] unconstitutional."   The undisputed evidence reveals that Plaintiff appeared at a preliminary parole hearing within eight days of his arrest and was produced for trial before the City Court within a month of his arrest (that ended prematurely due to his own misconduct).   Accordingly, Plaintiff's contention is unsupported.

Further, the factual predicate for the claim in Count II -  that the Defendants were

---

[8] ("In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a Plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.")(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)).

[9] ("To prove a § 1983 conspiracy, a Plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.").

responsible for the delays in his final revocation hearing - had been decided against Plaintiff in the parole revocation proceeding and he is barred by the doctrine of collateral estoppel from re-litigating the issue here.  Plaintiff raised the timeliness of his final revocation hearing before the administrative law judge at his final revocation hearing.  The administrative law judge determined on March 9, 2005 that all adjournments up to the Parole Division's final one-week adjournment request had been at the request of Plaintiff's counsel.  In addition, Plaintiff challenged the timeliness of the hearing. The administrative judge ruled that the hearing was timely, finding that "the Division of Parole was well within the 90 days which they normally would have to being a final revocation hearing. . . ." Because the judge ruled that the hearing was timely, he adjourned the hearing for one week and charged the final adjournment to Parole.  This ruling was necessarily decided and material to the first proceeding because, if the hearing had not been timely, the parole revocation proceeding would have been dismissed resulting in Plaintiff's return to parole. Plaintiff was represented by counsel at the administrative proceeding where this issue was raised, and, thus, he had a full and fair opportunity to litigate the issue.  He did not challenge the determination on appeal.

The factual predicate of the claim in Count II has been decided against Plaintiff and cannot be re-litigated here.  Accordingly, Count II must be dismissed.

### c.     Count III

In Count II, Plaintiff claims that Defendants violated his constitutional rights by improperly holding him in custody on the parole violator's warrant beyond 90 days.

The factual predicate for the claim in Count III was also previously litigated in the parole revocation proceeding, and a determination adverse to Plaintiff's interests was

13

made by the administrative law judge.  At the final parole revocation hearing on March 16, 2005, Plaintiff was represented by counsel and he pled guilty to one charge of violating his parole conditions in full satisfaction of all pending charges.  During the hearing, Plaintiff raised the issue with the administrative law judge about whether he was a category three or a category one parolee.  The administrative law judge ruled that Plaintiff was a category one parolee based on Plaintiff's robbery conviction.  This meant, as Plaintiff concedes, that he could be held in custody on the parole violator's warrant for up to 18 months.  The administrative law judge issued a written revocation decision that same day accepting Plaintiff's guilty plea and ruling that Plaintiff was a category one parolee.  Plaintiff did not challenge this determination on appeal.

The determination that Plaintiff was a category one parolee (meaning that he could be held in custody on the parole violator's warrant for up to 18 months) is identical to the issue which forms the factual predicate for the claim in Count III.  The issue was necessarily decided and material in the first action because it formed the basis of the punishment that Plaintiff was subjected to based upon his guilty plea to a violation of his terms of parole. Further, Plaintiff, who was represented by counsel, had a full and fair opportunity to litigate the determination in the first proceeding, including bringing an appeal which he did not do.   The doctrine of collateral estoppel prevents Plaintiff from re-litigating the issue of whether he was held in custody too long on the parole violator's warrant for up to 18 months.  Accordingly, the claim asserted in Count III must be dismissed.

### d. Count IV

In Count IV, Plaintiff contends that Broome County officials and employees violated

his constitutional rights by opening letters sent to him from the New York State Commission on Judicial Conduct regarding his complaint against the Binghamton City Court judge who was handling his criminal case.[10] He has not alleged or provided facts from which a reasonable fact finder could conclude that any of the City or State Defendants had any involvement in the asserted constitutional violations related to the letters sent to Plaintiff while he was incarcerated. Therefore, the claims asserted in Count IV against the City and State Defendants are dismissed.

### e.   Count V

In Count V, Plaintiff alleges that the State and City Defendants retaliated against him for prior lawsuits by delaying his final parole revocation hearing and keeping him incarcerated on the parole violator's warrant beyond the period that he legally could be held. As indicated above, the factual predicates of his retaliation claim have been decided against Plaintiff in the prior litigation, and he is barred from re-litigating the issue under the doctrine of collateral estoppel.

Assuming, *arguendo*, that the retaliation claims are not barred, the claims fail on the merits. To state a claim of retaliation, Plaintiff "must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the Plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)). If Plaintiff can make this showing, his claim may still fail if defendant can show by a

---

[10] Although unclear and not directly asserted, Plaintiff may also be contending that jail officials opened mail from his attorneys.

15

preponderance of the evidence that he would have taken the same action "'even in the absence of the protected conduct.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Mount Healthy Sch. Dist. v. Doyle, 429 U.S. 274, 287(1977)). "Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." Id. (citing Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994).

At his deposition, Plaintiff said that he believed Parole Officers Jackson and Simons retaliated against him in 2001 because Plaintiff brought a lawsuit against Broome County in 1999. Tr. 28-30.[11]  Mr. Jackson supposedly told Plaintiff the retaliation consisted of Mr. Simons imposing a special condition of Plaintiff's parole in September, 2001 that limited Plaintiff's visitation with his children. Tr. 33-34.  Plaintiff brought a separate legal action over the special condition. Tr. 34. The lawsuit was dismissed in 2007 by Judge Mordue and Plaintiff chose not to appeal the dismissal. Tr. 35-36.   Plaintiff contends that Mr. Simons retaliated against him a second time by delaying the final parole revocation hearing, and that this conduct was a continuation of the retaliation Simons purportedly perpetrated in 2001. Tr. 29.

The claim must be dismissed.  Plaintiff's principle evidence of a retaliatory motive related to his parole revocation hearing is a hearsay statement from one of his attorneys to the effect that the delay was caused by Defendant Simmons as a form of retaliation. However, it is well settled that hearsay is insufficient to provide a basis to withstand a motion for summary judgment. See Fed. R. Civ. P. 56(e)(1) (stating that an affidavit

---

[11] To the extent this is a separate claim of retaliation, it is barred by the three year statute of limitations. Owens v. Okure, 816 F.2d 45 (2d Cir. 1987), aff'd, 488 U.S. 235 (1989).

opposing summary judgment "must be made on personal knowledge, set[ting] out facts that would be admissible in evidence"); Feingold v. New York, 366 F.3d 138, 155 n. 17 (2d Cir. 2004) ("In reviewing the district court's grant of summary judgment, ... we may only consider admissible testimony."); Patterson v. County of Oneida, 375 F.3d 206, 222 (2d Cir. 2004) (finding that hearsay evidence regarding another person's tolerance for racial behavior was "not competent evidence in opposition to summary judgment").

Plaintiff further contends that he has Simons' "name on some of the adjournments. . . .," Tr. 41, and Plaintiff has a letter from Mr. Lattimer indicating that his final parole revocation hearing was postponed "indefinitely." Tr. 39.  Nevertheless, the undisputed evidence on this motion indicates that all of the adjournments in the parole revocation hearing, save for the last one-week adjournment, were at Plaintiff's counsel's request. Further, the undisputed evidence indicates that the final parole revocation hearing was timely commenced, and that the time Plaintiff was incarcerated on the revocation warrant was proper due to his parole status.  Therefore, even assuming, *arguendo*, that the Defendants maintained a retaliatory motive in delaying the proceedings because of Plaintiff's former lawsuits, the evidence demonstrates that the same action would have been taken "even in the absence of the protected conduct."  Graham, 89 F.3d at 79. Thus, the claims in Count V must be dismissed.

### f.    Claims against Broome County Defendants

Finally, in accordance with the dictates of Rule 1 of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 1 (The Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"), in the interests of justice, and in an effort to manage the Court's docket, the Court will *sua*

17

Case 3:06-cv-00540-TJM-DEP   Document 110   Filed 09/25/09   Page 18 of 20

*sponte* address the remaining claims in this action asserted against the Broome County Defendants (David E. Harder, Mark Smolinsky, the Broome County Sheriffs Department, and County of Broome Unknown Members).

Despite Magistrate Judge Peebles' April 28, 2008 Order directing Plaintiff to, *inter alia*, provide the requisite USM-285 forms and number of copies of the complaint and supplemental summons to the United States Marshal for service upon" the Broome County Defendants, Ord., dkt. # 73, Plaintiff has failed to act with regard to these Defendants. Plaintiff's disobedience of and disregard for Magistrate Judge Peebles' Order for well over one year indicates Plaintiff's intentions to abandon the claims against these Defendants.

Therefore, and to avoid having these claims linger unnecessarily on the docket, **PLAINTIFF IS ORDERED TO SHOW CAUSE IN WRITING BY 4:00 P.M. ON SEPTEMBER 30, 2009 WHY THE ACTION AGAINST THE BROOME COUNTY DEFENDANTS SHOULD NOT BE DISMISSED ON THE GROUNDS THAT PLAINTIFF HAS FAILED TO PROSECUTE THIS ACTION AGAINST, AND EFFECTUATE SERVICE UPON, THE BROOME COUNTY DEFENDANTS.**

**ABSENT A TIMELY SHOWING OF GOOD CAUSE, THE CLAIMS AGAINST THE BROOME COUNTY DEFENDANTS WILL BE DISMISSED WITHOUT PREJUDICE. THIS IS A CONDITIONAL ORDER OF DISMISSAL OF THESE CLAIMS, AND THERE WILL NOT BE A SUBSEQUENT ORDER DISMISSING THESE CLAIMS IF PLAINTIFF FAILS TO TIMELY SHOW GOOD CAUSE FOR HIS FAILURE TO PROSECUTE.**

**V.   CONCLUSIONS**

For the reasons set forth above,

The New York State Defendants' (John Lattimer, Al Simons, and Robert Dennison) motion for summary judgment, dkt. # 89, is **GRANTED** and all claims against these Defendants are **DISMISSED**.

The City of Binghamton Defendants' (Carl Smith, the City of Binghamton, and City of Binghamton Police Department) motion for summary judgment, dkt. # 90, is **GRANTED** and all claims against these Defendants are **DISMISSED**

Further,  **PLAINTIFF IS ORDERED TO SHOW CAUSE IN WRITING BY 4:00 P.M. ON SEPTEMBER 30, 2009 WHY THE ACTION AGAINST THE BROOME COUNTY DEFENDANTS (DAVID E. HARDER, MARK SMOLINSKY, THE BROOME COUNTY SHERIFFS DEPARTMENT, AND COUNTY OF BROOME UNKNOWN MEMBERS) SHOULD NOT BE DISMISSED ON THE GROUNDS THAT PLAINTIFF HAS FAILED TO PROSECUTE THIS ACTION AGAINST, AND EFFECTUATE SERVICE UPON, THESE DEFENDANTS.**

**ABSENT A TIMELY SHOWING OF GOOD CAUSE, THE CLAIMS AGAINST THE BROOME COUNTY DEFENDANTS WILL BE DISMISSED WITHOUT PREJUDICE. THIS IS A CONDITIONAL ORDER OF DISMISSAL OF THESE CLAIMS, AND THERE WILL NOT BE A SUBSEQUENT ORDER DISMISSING THESE CLAIMS IF PLAINTIFF FAILS TO TIMELY SHOW GOOD CAUSE FOR HIS FAILURE TO PROSECUTE.**

**IT IS SO ORDERED**.

DATED: September 25, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge